COOMBS *v.* RADFORD.

TRIAL—INSTRUCTIONS TO JURY.

In an action for false representations as to the value of certain corporate stock, plaintiff relied upon a letter stating that the corporation was paying net 12 per cent. on the capital, and submitted a request to charge, relating to the receipts and disbursements of the corporation at the time the letter was written, which drew as a conclusion from the accounts as stated the falsity of the representations. The circuit judge, in refusing the request, remarked that to give it would be to usurp the province of the jury, and that he could not say affirmatively that the figures as set forth therein were correct. The jury were then carefully instructed that the whole question of the truth or falsity of the letter was for their determination, and that, if they should find that the letter was substantially true, there could be no recovery. *Held,* that, in view of the whole charge, the remarks of the court in refusing the request were not open to the criticism that they allowed the jury to infer that, if the figures in question were found to be accurate, the conclusion set forth in the instruction must follow.

Error to Wayne; Hosmer, J. Submitted June 2, 1896. Decided July 21, 1896.

Case by Lorenzo D. Coombs against George W. Radford, James W. Fales, and Alexander McVittie for alleged false representations on the sale of corporate stock. From a judgment for plaintiff, defendants bring error. Affirmed.

*Edward A. Barnes,* for appellant Radford.
*John D. Conely,* for appellants Fales and McVittie.

*Fred A. Baker,* for appellee.

LONG, C. J. This is an action of trespass on the case, brought to recover of the defendants the sum of $2,000,

paid by plaintiff to the defendants for shares of stock in what is known as the "Keeley Institute." The action is based—*First*, upon the alleged fraudulent increase by the defendants, from $50,000 to $250,000, in the capital stock of that corporation; *second*, for false representations regarding the value of such stock. The institute was first organized December 2, 1891, and the three defendants and Anson Waring and Albert E. Carrier subscribed for all of such stock, and paid in 60 per cent. thereof. Arrangements were thereafter made with certain persons living in the city of Ypsilanti to increase the capital stock to the sum of $250,000. The stock was so increased, and the plaintiff purchased 80 shares, at $25 per share. Upon the trial in the court below the question as to the fraudulent increase of the capital stock was ruled out, and the only question submitted to the jury was whether there were any false representations made to the plaintiff as to the value of the shares at or before the time of his purchase. The false representation claimed was a letter written by defendant Radford to one J. W. Van Cleve, of Ypsilanti, as follows:

"April 25, 1892.
"J. W. VAN CLEVE,
       "Ypsilanti.
    "*Dear Sir:* In answer to your inquiry, will say that the Keeley Institute at Northville is now paying net 12 per cent. on $250,000.
                    "Yours, most truly,
                              "GEO. W. RADFORD."

Plaintiff's contention on the trial was that this letter, though written by defendant Radford, was authorized by the other defendants; that Van Cleve was actively engaged in procuring sales of surplus stock issued upon the reorganization of the corporation, and exhibited this letter to the plaintiff and other parties purchasing such stock. No complaint is made by the defendants but that such matters were fully and fairly submitted to the jury

under the charge of the court. The only error claimed in this court is in relation to the charge of the court under a certain request tendered to the court to give in his charge to the jury. The whole subject over which the contention now arises is fully set forth in the record of the charge of the court, as follows:

"I am asked to charge you that the evidence shows that the total cash receipts of the corporation during the month of March, 1892, including items credited on the treasurer's books under dates of April 2d, 4th, and 5th, were only $3,966.94, and that the total amount paid out for expenses during the same period was $3,178.56, and that the estimate of Mr. Radford that the receipts were $100 for each of 38 patients, or $3,800, and that the expenses were less than $1,200, was not justified by the actual facts, and that they did not warrant the representations contained in his letter of April 25, 1892. I think, gentlemen of the jury, if I should give you that request I should be usurping your province. I have laid down the rules for your guidance in determining whether the letter was true, or whether the letter was false, and I have not before me now the figures so that I could say affirmatively that the figures as represented by counsel are true or not; but I only desire to say, in this regard, that you have heard the evidence in the case, and it is for you to say, under the evidence that has been laid down before you, in determining what was meant by the term 'now,' as embodied in the letter, whether the statement that was made in the letter at that date was or was not substantially true. Then, of course, there can be no recovery on the part of the plaintiff. If it was not substantially true, then you will proceed to consider the other facts in the matter, under the rules I have laid down.

"*Mr. Conely:* In view of your having read that before the jury, I ask your honor to say that that is based upon a calculation of the entire business, from beginning to end, which your honor has already charged is not a criterion.

"*The Court:* No; it is based upon the month of March, as shown by the cash book.

"*Mr. Conely:* Yes; it has nothing to do with the earn-

ings or expenses.   The cash book don't undertake to put down all the earnings for the month, or all the expenses.

"*The Court:* I cannot say what it is.   The jury have heard the testimony.   I suppose it is based upon cash receipts for that time.

"*Mr. Baker* (plaintiff's attorney): May the jury have the cash book and treasurer's report?

"*The Court:* If counsel agree that the jury may have the cash book, they may; otherwise not.   I cannot send out with the jury anything but what is agreed upon by counsel.

"*Mr. Baker:* We would like to have them have the cash book, and the written letter, and the certificates of stock, and treasurer's report, which is a recapitulation.

"*Mr. Conely:* I think we had better send for the witnesses, your honor.

"*The Court:* Well, gentlemen, you may follow the officer."

The jury thereupon retired in charge of an officer, but were subsequently recalled by the court, and a number of requests submitted by defendants' counsel were given, and then the following occurred:

"*Mr. Conely:* Before they return, your honor: I made a mistake about that statement being for the whole time, instead of March, but your honor corrected me; and I would like to know— As it was read, I didn't quite fully take the figures, in hearing them, and, although your honor said the whole matter should go to the jury, I would like to know whether those figures included amounts paid on the note during March, and amounts paid for medicine, which went over.

"*The Court:* Mr. Conely, you will have to ask that of counsel who did the figuring.   I did not assume to say to the jury that the figures were correct, but I left that matter to the jury.

"*Mr. Baker:* For that reason I would like to have the jury take the book.

"*The Court:* Whether the jury may or may not take the book is a question only for counsel.   All the money that was earned, I think, was not put in it, so that the cash book would not be a true criterion.   Whether that statement by Mr. Conely is or is not true is a question for the jury, and not for the court, because every ques-

tion in the case, of fact, gentlemen of the jury, is a question for you, and not for me. Gentlemen, you may follow the officer."

The contention of counsel for defendants is that the defendants were prejudiced by the language of the court in refusing to give the request, because, by saying that the reason he could not give it was that he did not know whether the figures were accurate, and that it was not his province, but the jury's, to say whether they were or not, he allowed the jury to infer that, if they should find that Mr. Baker's figures were accurate, his conclusion that the net earnings were at a less rate than $30,000 a year must follow, provided they construed the word "now" as referring the statement to the month of March; that what the court should have said was that the figures read gave no authority for them to draw such conclusion, because the cash receipts and disbursements during the month bore no necessary relation to the earnings and expenses during that month, and the cash book did not show what were the earnings and expenses; that, instead of telling them that it was for them to decide whether Mr. Baker's conclusion was true, he should have told them definitely that his conclusion was not justified by his premises.

We think the jury could not have been misled by this portion of the charge. The court had specifically instructed them in relation to the statements in the letter. The court had said:

"Perhaps we had better ascertain, in the first place, whether or not the statement is a false or a true statement. It is obvious that the stock had not paid 12 per cent. for the time the corporation had been organized, but that is not the statement in the letter. Now, gentlemen of the jury, I cannot say what is meant by the word 'now.' I think I will submit that to you. It is contended by Mr. Radford [one of the defendants] that the word 'now' referred to the month of March,—the basis of the month of March,—and that it was substantially true. Now, you have heard the testimony in the case, and it is

for you to say whether it was or whether it was not a true letter. If it was a true letter, and if the statement embodied in that letter was not false, but was substantially true, and it was written without an intent to deceive, and was substantially true at the time it was written,—if it was then paying the sum of 12 per cent. on $250,000,—obviously, under those circumstances, there can be no recovery. But if, gentlemen, on the contrary, it was false, if it was not paying, at the time the letter was written, the sum of 12 per cent. on $250,000, then we will proceed to consider the other evidence there is in the case."

It cannot be contended but this was a very fair statement of the question to the jury, and no complaint could be made by the defendants that under their contention the case was not fully and fairly submitted to the jury. The fact that counsel for plaintiff afterwards tendered a request, which the court read and refused to give, cannot be said to have misled the jury, though coupled with the statement made by the court in reference thereto. The jury must have understood that the court submitted that whole question for their consideration, and we think there was no warrant for the claim of counsel that the remarks of the court left to the jury the inference that, if they found Mr. Baker's figures were correct, they should find his conclusion was correct. The court had stated several times in the charge to the jury that, if they found that the letter was substantially true, there could be no recovery, and that the whole question of its truth or falsity was for their consideration and determination, and not for the court.

We find no error in the record, and the judgment must be affirmed.

The other Justices concurred.